## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| OSS Nokalva, Inc., | : |
| Plaintiff, | : HON. MARY L. COOPER<br>: Civil Action No. 08-03169 (MLC) (TJB) |
| v. | : |
| European Space Agency, | : Return Date:  August 4, 2008 |
| Defendant. | : Oral Argument Requested |
| | : |
| | : |
| | : (Document Electronically Filed) |
| | : |

---

## DEFENDANT EUROPEAN SPACE AGENCY'S BRIEF IN SUPPORT
## OF ITS MOTION TO DISMISS PURSUANT TO THE
## INTERNATIONAL ORGANIZATIONS IMMUNITIES ACT

---

Elliot D. Ostrove
DAY PITNEY LLP
P.O. Box 1945
Morristown, NJ  07962-1945
(973) 966-6300
Attorneys For Defendant
European Space Agency

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........................................................................................................ ii

SPECIAL APPEARANCE ........................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................................... 2

STATEMENT OF ALLEGATIONS ............................................................................................ 3

ARGUMENT ................................................................................................................................ 6

I.      THE EUROPEAN SPACE AGENCY IS ENTITLED TO DISMISSAL OF THE
        COMPLAINT BECAUSE PURSUANT TO THE IOIA THIS COURT LACKS
        SUBJECT MATTER JURISDICTION TO ENTERTAIN THE CAUSE OF
        ACTION     THAT     OSS     HAS     BROUGHT     AGAINST     THE
        ESA.................................................................................................................................. 6

        A.      The Standard for a Motion to Dismiss.......................................... 6

        B.      The IOIA: Primary Source of International Organization Immunity Law... 7

        C.      Immunity Under the IOIA is Absolute.......................................... 8

        D.      The ESA Has Not Expressly Waived Immunity Pursuant to its
                Convention................................................................................. 11

        E.      Public Policy Supports Dismissal of OSS's Complaint..................... 12

CONCLUSION............................................................................................................................ 13

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                          <u>PAGE(S)</u>

*Atkinson v. The Inter-American Dev. Bank*, 156 F.3d 1335 (D.C. Cir. 1998) ........................7, 8, 9

*Bro-Tech. Corp. v. European Bank for Reconstruction and Dev.*, 2000 U.S.
    Dist. LEXIS 17049 *1 (E.D. Pa. 2000) ...................................................................10

*In re Mercedes-Benz Antitrust Litig.*, 157 F. Supp. 2d 355 (D.N.J. 2001)......................................7

*Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424 (D.N.J. 1999)…………………………..............6

*Mendaro v. The World Bank*, 717 F. 2d 610 (D.C. Cir. 1983) ...........................................7, 11, 12

*Pashun v. Modero*, No. 92-3620, 1993 U.S. Dist. LEXIS 7147 (D.N.J. May 26, 1993).............6

*Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392 (3d Cir. 1991)................................7

*Weidner v. Int'l Telecomm. Satellite Org.*, 392 A.2d 508 (D.C. Cir. 1978)……………...6, 7, 8, 9


<u>STATUTES</u>

22 U.S.C. § 288, et seq. (2008)....................................................................................2, 7, 8, 9

28 U.S.C. § 1446, et seq. (2008) .............................................................................................3

<u>RULES</u>

Fed. R. Civ. P. 12..........................................................................................................2, 6, 7, 10

## <u>SPECIAL APPEARANCE</u>

The European Space Agency ("ESA"), makes this Special Appearance solely for the limited purpose of contesting this Court's jurisdiction over this matter. Accordingly, this Special Appearance should not be construed as constituting either ESA's consent to jurisdiction, or its waiver of immunity, with respect to this matter.

## **PRELIMINARY STATEMENT**

Defendant European Space Agency ("ESA") submits this brief in support of its motion to dismiss the claims asserted by plaintiff OSS Nokalva, Inc.'s ("OSS") Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  OSS's claims against the ESA should be dismissed because the International Organizations Immunities Act ("IOIA"), 22 U.S.C § 288 *et seq.* (2008), confers immunity to the ESA from suit and judicial process.  Where a cause of action is brought against an international organization cloaked with such immunity, courts lack jurisdiction to entertain the action.  Moreover, because the ESA is immune from the type of suit brought by OSS, the Complaint fails to state a claim upon which relief can be granted.

Here, it is beyond dispute that IOIA immunity applies to the ESA; the statute specifically designates the ESA as a recognized organization entitled to immunity.  22 U.S.C. § 288f-1.  Therefore, absent an express waiver of immunity, the IOIA immunizes the ESA from suit such as the one brought by OSS.  The ESA Convention ("Convention"), describes the method by which the ESA may waive its statutorily granted immunity.  Other than certain enumerated and limited situations where immunity is explicitly waived by the Convention (none of which apply here), the Convention provides that it is the ESA Council ("Council"), only, who may waive immunity in a particular case.  That waiver must be an express waiver by the Council.  As set forth in greater detail below, the Council has not expressly waived immunity in this case.  Accordingly, because the "primary source" of United States law on international immunity confers such immunity to the ESA,  and because that immunity was not waived relative to the claims brought by OSS, OSS's complaint must be dismissed.

## STATEMENT OF ALLEGATIONS

### The Instant Case

OSS is a New Jersey corporation engaged in providing software and services to its customers. Plaintiff's Complaint at ¶1. OSS has entered into various License Agreements and Software Maintenance Agreements (the "Agreements"), with the ESA. Plaintiff's Complaint at ¶3. On May 22, 2008, OSS filed a Complaint against the ESA in the Superior Court of New Jersey, Law Division, Somerset County, asserting among other things, claims alleging breach of the Agreements. Plaintiff's Complaint at ¶¶5-10. In its Complaint, OSS alleges that "jurisdiction is expressly provided to this court under the agreements in question." Plaintiff's Complaint at ¶4. On June 27, 2008, the ESA removed this matter to the District of New Jersey pursuant to 28 U.S.C. § 1446 *et seq.*

### About the ESA

The ESA is an international organization headquartered in Paris, France, that is comprised of seventeen Member States[1] and is responsible for fashioning and implementing a comprehensive European space program ("European Space Plan"). *About ESA, http://www.esa.int/SPECIALS/About_ESA/index.html.* The ESA's purpose, as articulated in its Convention, is "to provide for and to promote, for exclusively peaceful purposes, cooperation among European States in space research and technology...." *European Space Agency Convention art. II.* In addition to its French headquarters, the ESA has cites in several European

---

[1] The Member States include: Austria, Belgium, Denmark, Finland, France, Germany, Greece, Ireland, Italy, Luxembourg, the Netherlands, Norway, Portugal, Spain, Sweden, Switzerland and the United Kingdom. Canada participates in certain projects pursuant to a Cooperation Agreement. Hungary, Poland, Romania and the Czech Republic are designated European Cooperating States. *About ESA, http://www.esa.int/SPECIALS/About_ESA/index.html.*

countries, each of which is devoted to different aspects of space research or technology.[2]  *Id.*  The

ESA also has liaison offices in Belgium, the United States, and Russia, as well as a launch base

in French Guiana.  *Id.*

While the ESA as it currently exists was established in 1975, the organization's

roots and predecessor organizations date back almost fifty years.  *History of the European Space*

*Agency, http://www.esa.int/SPECIALS/About_ESA/SEM7VFEVL2F_0.html.*  The governing body

of the ESA is the Council, which is composed of senior representatives of the ESA Member

States.  *ESA Headquarters, http://www.esa.int/esaCP/ESATE4UM5JC_index_0.html.*   The

Council's responsibilities include formulating the European Space Plan and providing for long-

term funding of the ESA's activities.  *Id.*  Many of the Council's specific responsibilities and

powers are delineated in the Convention.

<u>European Name, Global Scope</u>

While the ESA is an European organization, it relies on global cooperation in

order to achieve its many goals.  Specifically, the ESA "frequently joins in cooperative ventures

with other spacefaring nations such as the United States, Russia, China, Canada, India and

Japan."  *International Cooperation, http://www.esa.int/esaCP/ESATE4UM5JC_index_0.html.*

Additionally, ESA's Office for International Relations regularly interacts with international

organizations including the United Nations World Meteorological Organization while the ESA's

French headquarters hosts the International Astronautical Federation.  *Id.*  Critically, the ESA's

---

[2] The other cites include: the European Astronauts Centre in Cologne, Germany ("EAC"); the European Space Astronomy Centre, in Villafranca del Castillo, Madrid Spain ("ESAC"); the European Space Operations Centre in Darmstadt, Germany ("ESOC"); the ESA Centre for Earth Observation, in Frascati, near Rome, Italy ("ESRIN"); and the European Space Research and Technology Centre, Noordwijk, the Netherlands ("ESTEC").  *Id.*

international involvement is not limited to countries with established space programs – the ESA also assists developing countries. For example, the ESA utilizes a global network of ground-receiving stations in order to collect remote sensing data for transmission of weather and environmental data to African countries. *ESTRACK Tracking Stations, http://www.esa.int/SPECIALS/Operations/SEM8YCSMTWE_0.html.* International cooperation and collaboration are therefore crucial to both the mission and success of the ESA.

### The Convention

The Convention provides, among other things, that the ESA is generally immune from "jurisdiction and execution." *European Space Agency Convention annex I art. IV para. 1.* The immunity conferred by the Convention is expansive: "[t]he Agency's property and assets, wherever situated, shall be immune from any form of requisition, confiscation, expropriation and sequestration." *European Space Agency Convention annex I art. IV para. 2.* Having established expansive immunity as the rule, the Convention enumerates three limited scenarios where immunity is waived, none of which are relevant here.[3] Additionally, the Convention provides that it is the Council, and only the Council, that is authorized to waive immunity in a given case. *European Space Agency Convention art. VI para. 1a.* Specifically, the Convention dictates that the ESA may waive immunity "to the extent it shall, by decision of the Council, have expressly waived such immunity in a particular case...." *European Space Agency Convention annex I art. IV para. 1a.* No such waiver has occurred here because the Council has not expressly waived its immunity with respect to the Agreements it entered into with OSS. Affidavit of Karlheinz

---

[3] These three scenarios are: (1) civil actions arising from motor vehicle accidents; (2) enforcement of arbitration awards made pursuant to the Convention; and (3) attachment actions with respect to salaries and emoluments owed by the ESA to a staff member. *European Space Agency Convention annex I art. IV para. 1(b)-(d).*

Kreuzberg, dated July 3, 2008 ("Kreuzberg Aff."), ¶¶ 2, 4.  Absent the necessary express waiver

by the Council, the ESA remains immune from the type of suit brought by OSS.

## ARGUMENT

**I.**  **THE EUROPEAN SPACE AGENCY IS ENTITLED TO DISMISSAL OF THE COMPLAINT BECAUSE, PURSUANT TO THE IOIA, THIS COURT LACKS SUBJECT MATTER JURISDICTION TO ENTERTAIN THE CAUSE OF ACTION THAT OSS HAS BROUGHT AGAINST THE ESA**

**A. The Standard for a Motion to Dismiss.**

A defendant may move to dismiss a claim for lack of subject matter jurisdiction

under Rule 12(b)(1) at any time.  Fed. R. Civ. P. 12(b)(1).  *Iwanowa v. Ford Motor Co.*, 67 F.

Supp. 2d 424, 437-38 (D.N.J. 1999).  When so moving, a defendant is entitled to "attack subject

matter jurisdiction by factually challenging the jurisdictional allegations set forth in the

complaint." *Id.* at 438.  Under this standard, "no presumptive truthfulness attaches to plaintiff's

allegations and the existence of disputed material facts will not preclude the Court from

evaluating for itself the merits of jurisdictional claims." *Pashun v. Modero*, No. 92-3620, 1993

U.S. Dist. LEXIS 7147, at *6 (D.N.J. May 26, 1993).  With respect to the IOIA, at least one

federal court has held that "courts lack jurisdiction to entertain actions brought against"

international organization cloaked with this statutory immunity.  *Weidner v. Int'l Telecomm.

Satellite Org.*, 392 A.2d 508, 510 (D.C. Cir. 1978) (affirming trial court's dismissal of plaintiff's

Complaint for lack of jurisdiction).

OSS's Complaint against the ESA should also be dismissed because it fails to

state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A court may dismiss a

complaint pursuant to Fed. R. Civ. P. 12(b)(6) where it appears that the plaintiff is not entitled to relief under any set of facts which could be proved consistent with the allegations in the complaint. *In re Mercedes Benz Antitrust Litig.*, 157 F. Supp. 2d 355, 359 (D.N.J. 2001); *see also Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1395 (3d Cir. 1991). Because the ESA is immune from the type of suit brought by OSS, the Complaint fails to state a claim upon which relief can be granted and therefore must be dismissed.

## B. The IOIA: Primary Source of International Organization Immunity Law.

As a threshold matter, it should be noted that research has revealed little case law either applying the IOIA or interpreting the scope of the immunity that it confers to recognized international organizations. What case law there is, however, instructs that in this case, the IOIA's expansive immunity necessitates dismissal of OSS's complaint. Critically, federal courts have identified the IOIA as the "*primary source* of national law on the immunity of international organizations." *Mendaro v. The World Bank*, 717 F. 2d 610, 617 (D.C. Cir. 1983) (emphasis added). The authority to designate an international organization as one that meets the criteria set forth in the IOIA lies with the President. *Weidner v. Int'l Telecomm. Satellite Org.*, 392 A.2d 508, 510 (D.C. Cir. 1978). It is also the President who "retains authority to modify, condition, limit and even revoke the otherwise absolute immunity of a designated organization." *Atkinson v. The Inter-American Dev. Bank*, 156 F.3d 1335, 1341 (D.C. Cir. 1998) (citing 22 U.S.C. § 288).

Here, there can be no dispute that the ESA is entitled to immunity pursuant to the IOIA. The ESA was first designated as an international organization meeting the criteria set

forth in the IOIA by Executive Order signed by President Johnson in 1967.[4]  Exec. Order No.

11,351, 32 Fed. Reg. 7,561 (May 22, 1967). The ESA's designation as a recognized organization

was subsequently codified at 22 U.S.C. § 288f-1: "[t]he provisions of this subchapter may be

extended to the European Space Agency...in the same manner, to the same extent, and subject to

the same conditions, as they may be extended to a public international organization in which the

United States participates pursuant to any treaty or under the authority of any Act of Congress

authorizing such participation or making an appropriation for such participation."  Such

designation entitles the ESA to "those immunities which Congress had determined to extend to

all such international organization so designated." *Weidner v. Int'l Telecomm. Satellite Org.*, 392

A.2d 508, 510 (D.C. Cir. 1978).  Consequently, by virtue of its designation as a recognized

organization under the IOIA, the ESA has enjoyed immunity from suit, such as the one brought

by OSS, for over four decades.

**C.  Immunity Under the IOIA is Absolute.**

    The IOIA provides that recognized organizations such as the ESA "enjoy the same

immunity from suit and every form of judicial process as is enjoyed by foreign governments...."

22 U.S.C. § 288a(b).  IOIA immunity applies to "*every form of judicial process*" and "admits of

no exception for 'unobtrusive' judicial processes." *Atkinson v. The Inter-American Dev. Bank*,

156 F.3d 1335, 1339 (D.C. Cir. 1998) (emphasis original).  Just as IOIA immunity applies to

every form of judicial process, it also applies to every form of asset, extending immunity to

recognized organizations' "property and...assets, wherever located, and by whomsoever held...."

---

[4]  In 1967, President Johnson designated an ESA predecessor organization, the European Space Research Organization ("ESRO"), as one meeting the requirements of the IOIA. *Id.*  The ESRO and another European space organization, the European Launch Development Organization ("ELDO"), were ultimately consolidated into one organization when the ESA was established in 1975.  *History of the European Space Agency*, http://www.esa.int/SPECIALS/About_ESA/SEM7VFEVL2F_0.html.

22 U.S.C. § 288a(b).  As set forth below, courts have characterized the expansive immunity conferred by the IOIA as "absolute."

      In *Weidner v. Int'l Telecomm. Satellite Org.*, the Court of Appeals for the District of Columbia affirmed a trial court's dismissal of plaintiff's cause of action in light of the immunity that the IOIA conferred to the defendant international organization. 392 A.2d 508, 509 (D.C.C. 1978).  There, the plaintiff filed a complaint in the Superior Court of the District of Columbia alleging that he was wrongfully dismissed from his job; the International Telecommunications Satellite Organization ("Intelstat"), "made a special appearance solely to assert its immunity from suit pursuant to the" IOIA.  *Id.*  The trial court granted Intelstat's motion to dismiss.  *Id.* at 510.  On appeal, the Court of Appeals affirmed, explaining that "courts lack jurisdiction to entertain actions brought against" organizations clothed with IOIA immunity "so long as immunity exists." *Id.* at 510.  In dismissing plaintiff's complaint, the court conceded that the precise scope of IOIA immunity remained "unclear."  *Id.* at 511.  Fortunately, and as set forth below, the Court of Appeals for the District of Columbia clarified the scope of such immunity two decades later.

      When confronted with the issue of interpreting the scope of the immunity provided by the IOIA, the Court of Appeals for the District of Columbia concluded that the IOIA confers "virtually absolute immunity" upon recognized organizations. *Atkinson v. The Inter-American Dev. Bank*, 156 F.3d 1335, 1341 (D.C. Cir. 1998) (citing *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 486 (1983)).  In *Atkinson*, the Court of Appeals affirmed the District Court's dismissal of plaintiff's declaratory judgment action which she brought seeking a determination that a bank protected by the IOIA was not immune from garnishment proceedings

under the statute.  In upholding the District Court's dismissal of the plaintiff's action, the court endorsed the bank's argument that IOIA immunity is absolute and "poses a bar to any suit, regardless of its origin or subject matter."  *Id.* at 1340.  The *Atkinson* court reached this conclusion despite plaintiff's argument that developments in international immunity law, developments that had scaled back international immunity for foreign sovereigns, required the court to apply a more restrictive form of immunity.  *Id.* at 1341.  In rejecting plaintiff's argument, the court concluded that because Congress' intent when drafting the IOIA was to "adopt that body of law only as it existed in 1945 -- when immunity of foreign sovereigns was absolute," IOIA immunity remains absolute today.  *Id.*  Consequently, the IOIA's provision of "virtually absolute immunity" to the ESA requires dismissal of OSS's suit.

Expressing agreement with the cases discussed above, the Eastern District of Pennsylvania has explicitly adopted the Court of Appeals for the District of Columbia's reasoning set forth in *Atkinson.  Bro-Tech. Corp. v. European Bank for Reconstruction and Dev.*, 2000 U.S. Dist. LEXIS 17049, *12-13 (E.D. Pa. 2000).  In *Bro-Tech.*, the District Court granted the defendant European Bank for Reconstruction and Development's motion to dismiss the plaintiff's Complaint pursuant to *Fed. R. Civ. P.* 12(b)(1), in light of the absolute immunity conferred by the IOIA to the bank.  *Id.* at *23-24.  In dismissing the plaintiff's complaint, the District Court explained that "[t]he Court of Appeals for the District of Columbia held that the IOIA intended to vest international organizations with absolute immunity."  *Id.* at 12 (citing *Atkinson*, 156 F.3d at 1341).  Ultimately, *Bro-Tech.* found *Atkinson's* conclusion convincing: the court held that under the reasoning set forth in *Atkinson*, the bank was entitled to absolute immunity under the IOIA.  *Id.* at 13.  Consequently, the court lacked subject matter jurisdiction to entertain plaintiff's action, and dismissal of the Complaint was required.  *Id.* at 24.

**D. The ESA Has Not Expressly Waived Immunity Pursuant to its Convention.**

As set forth above, the provisions of the ESA's Convention devoted to immunity parallel the IOIA's conferral of absolute immunity to recognized organizations. Specifically, the Convention provides that the ESA is immune from "jurisdiction and execution" except in limited circumstances. *European Space Agency Convention art. VI para. 1.* The Convention enumerates three limited scenarios, none of which are implicated here, where the ESA has waived its immunity. Additionally, the Convention provides that the ESA may waive its absolute immunity when "by design of the Council, [it has] expressly waived such immunity in a particular case." *Id.* As set forth above, the Council has not expressly waived its immunity in this case. Kreuzberg Aff., ¶ 4. OSS's contention that "jurisdiction is expressly provided to this court" pursuant to the Agreements ignores the critical fact that, pursuant to the Convention, it is the Council, and only the Council, that may decide to expressly waive ESA's immunity. Because the Council did not authorize waiver of immunity here, the Agreements alone are wholly insufficient to waive the ESA's statutory immunity.[5]

An additional factor that militates against this court finding that the ESA waived its immunity is that case law demonstrates that a court should be hesitant to hold that such a waiver has occurred inadvertently. *Mendaro v. The World Bank*, 717 F. 2d 610, 617 (D.C. Cir. 1983). *Mendaro* cautioned that the IOIA's requirement of an express waiver "suggests that courts should be reluctant to find that an international organization has inadvertently waived immunity when the organization might be subject to a class of suits which would interfere with its functions." *Id.* Because the Council has not expressly waived immunity in this case, and

---

[5] Furthermore, Annex 1, Article XXV of the Convention requires that if and when the Council decides to waive immunity with respect to a particular contract, that contract must provide for arbitration.

because none of the enumerated and limited waiver scenarios articulated in the Convention are implicated, the absolute immunity conferred by the IOIA to the ESA remains intact, and requires dismissal of OSS's complaint.

## E. Public Policy Supports Dismissal of OSS's Complaint

Finally, the policy considerations underlying the IOIA's provision of privileges and immunities to international organizations also necessitate dismissal of OSS's complaint. Specifically, "[t]he strong foundation of international law for the privileges and immunities accorded to international organizations denotes the fundamental importance of these immunities to the growing efforts to achieve coordinated international action through multinational organizations with specific missions." *Mendaro v. The World Bank*, 717 F.2d 610, 615 (D.C. Cir. 1983). As set forth in the Factual Allegations, *supra*, the ESA is a multinational organization devoted to advancing not only European, but also global space and technological development. To that end, the ESA collaborates with nations (including the United States) or entities from at least five continents. Simply put, the expansive IOIA immunities are an integral part of the ESA's global goals and international space efforts.

## CONCLUSION

For the foregoing reasons, defendant European Space Agency respectfully requests that the Court dismiss plaintiff OSS Nokalva, Inc.'s Complaint against it in its entirety.

DAY PITNEY LLP
Attorneys for Defendant
European Space Agency

By: _____
ELLIOT D. OSTROVE
A Member of the Firm

DATED: July 3, 2008